UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| PAMELA A. PARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:14-cv-142 |
| | ) | |
| PNC MORTGAGE, a division of | ) | |
| PNC BANK, N.A., | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Defendant, PNC Mortgage, a division of PNC Bank, National Association ("**PNC**"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully states as follows in support of its Motion to Dismiss the Complaint ("**Complaint**") filed by Plaintiff, Pamela A. Parris ("**Plaintiff**").

## I.    INTRODUCTION

This matter arises out of a home mortgage loan the Plaintiff entered into on or about October 4, 2005, with National City Bank which PNC Mortgage, a subsidiary of PNC Bank, N.A. ("**PNC**"), took over from National City Bank in November 2009 by way of merger.[1]  In the Complaint, Plaintiff asserts two breach of contract counts against PNC arising out of Plaintiff's

---

[1] On December 31, 2008, PNC Financial acquired by merger National City Bank's parent company, National City Corporation.  National City Bank, formerly a subsidiary of National City Corporation, became a subsidiary of PNC Financial.  In November 2009, PNC Bank, one of PNC Financial's subsidiaries, became the successor by merger to National City Bank, thereby taking over National City Bank's rights and obligations under the Note at issue in this case.

efforts to modify her loan following the loss of her job and multiple subsequent bankruptcies. Specifically, Plaintiff alleges she incurred damages as a result of:  (1) PNC's breach of contract by allegedly failing to conduct a face-to-face meeting, and (2) PNC's alleged breach of the implied covenant of good faith and fair dealing.

As discussed below, Plaintiff's claims fail as a matter of law for the following independent grounds:  (1) Count One (failure to conduct a face-to-face meeting) fails to state a claim in light of the extensive interaction between PNC and Plaintiff including a loan modification and two bankruptcies which obviate the need for a face-to-face meeting; and (2) Count Two (breach of the implied duty of good faith and fair dealing) is a disguised HAMP claim of the kind this Court has routinely dismissed.  Finally, Plaintiff's Complaint provides no basis for her claim for punitive damages.  Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

PNC accepts as true the allegations of the Complaint *solely* for the purposes of this Motion.[2]  In addition, this Court may take judicial notice of certain facts and documents referenced in Plaintiff's Complaint including the public records of Plaintiff's two chapter 13 bankruptcy proceedings, Plaintiff's chapter 7 bankruptcy, as well as pleadings filed in Plaintiff's State Court, First Federal Suit and Second Federal Suit (defined below) proceedings.

Plaintiff entered into a Note with National City Bank on or about October 4, 2005, which loan was secured by a Deed of Trust on her real property located at 401 Rennie Court, Virginia Beach, Virginia ("**Property**").  Complaint at ¶¶ 6-7.  Importantly, Plaintiff concedes that on or

---

[2]  PNC reserves its rights to contest all facts in the event the Motion is denied.

about the latter part of 2008, she became delinquent on her mortgage payments.  Complaint at ¶23.

Plaintiff filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Virginia (Norfolk Division), through her first counsel, Tom Smith, on January 7, 2009 (Case No. 09-70042).  On March 19, 2009, she filed a Modified Chapter 13 Plan wherein Plaintiff agreed to make regular monthly payments of $1,456.00 to PNC as well as monthly arrearage payments of $55.00 to cover an estimated arrearage of $3,000.00.  [Docket No. 15].  The Chapter 13 Plan was confirmed - with PNC's support - by Order dated April 22, 2009.  [Docket No. 21].  On October 16, 2009, Plaintiff filed a Motion To Suspend Chapter 13 Plan Payments dues to changes in her employment.  [Docket No. 38].  Plaintiff asserted that she would be unable to make scheduled plan payments for November 2009, December 2009, and January 2010, but would resume payments in February 2010.  By Order dated November 19, 2009, Plaintiff's Motion To Suspend was granted but she was warned that should she fall more than 30 days behind any future plan payments, her case may be dismissed.  [Docket No. 39]. Plaintiff was unable to resume payments consistent with her plan and by Order dated March 11, 2010, her first bankruptcy case was dismissed.  [Docket No. 41].

On March 17, 2010, following Plaintiff's failed bankruptcy, PNC provided written notice to Plaintiff, in accordance with Virginia law, of a foreclosure sale scheduled for July 6, 2010. Complaint at ¶¶33, 42.  Plaintiff subsequently filed a second chapter 13 bankruptcy (Case No. 10-73134), through her second counsel, the Boleman Law Firm, on July 2, 2010, thus stopping the scheduled foreclosure.  On August 31, 2010, Plaintiff filed a Modified Chapter 13 Plan wherein Plaintiff agreed to make regular monthly payments of $1,456.00 to PNC as well as monthly

arrearage payments of $365.00 to cover an estimated arrearage *that had now grown to $20,000.00*. [Docket No. 24]. This Chapter 13 Plan was confirmed – again with PNC's support - by Order dated November 16, 2010. [Docket No. 30].

On January 26, 2011, Plaintiff filed a Motion to Substitute Counsel to replace the Boleman Law Firm with her third counsel, John E. Bedi, for unexplained reasons. [Docket No. 33]. On February 23, 2011, the Chapter 13 Trustee filed a Motion to Dismiss Plaintiff's second bankruptcy case due to her failure to make payments in accordance with her plan. [Docket No. 36]. The Trustee's Motion to Dismiss was granted by Order dated March 31, 2011 subject to the case being converted to one under chapter 7. [Docket No. 40]. By Order dated April 11, 2011, the conversion to chapter 7 was approved. On April 21, 2011, Plaintiff filed Amended bankruptcy Schedules I and J indicating her combined average monthly income as a massage therapist and part time cupcake baker was $2,966.66 while her average monthly expenses were $4,003.91, *a monthly deficit of $1,037.25*. [Docket No. 58]. On September 7, 2011, Plaintiff was granted a discharge.

Following the conversion of her second chapter 13 plan to one under chapter 7, and despite the fact that Plaintiff was over $20,000 in arrears, PNC continued to entertain Plaintiff's request for a loan modification. On April 11, 2011, Plaintiff executed a Loan Modification Agreement which PNC countersigned on May 4, 2011, and recorded in the land records in Virginia Beach on June 21, 2011. Complaint at ¶¶52, 56-57. In September 2011, PNC notified Plaintiff that she "was behind" in her loan modification payments. Complaint at ¶70. PNC scheduled another foreclosure for August 29, 2012. Complaint at ¶63.

On August 15, 2012, Plaintiff filed a complaint, through her fourth counsel, Ronald

Slaven, in the Virginia Beach Circuit Court seeking injunctive relief prohibiting PNC from foreclosing on her Property (Case No. CL12-4401) ("**First State Court Complaint**") (attached hereto as Exhibit 1).  Complaint at ¶69.  A copy of the Note and Deed of Trust were attached as exhibits to the complaint.  In her State Court Complaint, Plaintiff asserted that, "[d]ue to *miscommunications* between PNC Bank and Ms. Parris and *other setbacks*, PNC Bank has caused its trustee to commence steps to foreclose on the Property."  State Court Complaint at ¶8 (emphasis added).  Following PNC's cancellation of the foreclosure sale, Plaintiff non-suited her First State Court Complaint on May 31, 2013.  Complaint at ¶71.

On November 29, 2013, Plaintiff retained her fifth counsel, Consumer Litigation Associates, and filed a Complaint in the Norfolk Division of this Court against the Law Office of Shapiro, Brown & Alt, LLP and Professional Foreclosure Corporation of Virginia, for alleged violations of the Fair Debt Collection Practices Act in connection with the scheduling of the foreclosure sale (Case No. 2:13-cv-679) ("**First Federal Suit**").  A copy of the Note and Deed of Trust were attached as exhibits to that complaint.  While the defendants' Motion to Dismiss was pending, Plaintiff voluntarily dismissed the suit.

On December 31, 2013, Plaintiff filed a Complaint in the Richmond Division of this Court [Case No. 3:13cv860] against PNC and Experian Information Solutions, Inc. ("**Experian**") asserting the following causes of action against PNC:  (1) PNC's alleged breach of the implied covenant of good faith and fair dealing; (2) PNC's alleged intentional infliction of emotional distress; and (3) alleged violations of the FCRA related to PNC Bank's reporting of Plaintiff's delinquency to Experian. (**"Second Federal Suit"**)  PNC filed its Motion to Dismiss and Memorandum in Support [Docket Nos. 8, 9] on February 21, 2014.  On March 25, 2014, Plaintiff

filed her Notice of Voluntary Dismissal as to PNC [Docket No. 17] and Stipulation of Dismissal as to Experian [Docket No. 18] with whom she had settled.  On March 27, 2014, Plaintiff filed yet another state court Complaint in the Circuit Court of Virginia Beach (Case No. CL14-1341) ("Second State Court Complaint") against PNC alleging the same breach of implied duty and fair dealing claim she alleged in the Second Federal Suit and adding a claim for breach of contract for failure to conduct a face to face meeting.  PNC timely removed the Second State Court Complaint to this Court on April 10, 2014.

As demonstrated below, both of Plaintiff's claims are barred as a matter of law and the Complaint should be dismissed with prejudice.

## III.    ARGUMENT

### A.    Legal Standard

A Fed. R. Civ. P. 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. Gasner v. County of Dinwiddie, 162 F.R.D. 280, 281 (E.D. Va. 1995), aff'd, 103 F.3d 351 (4th Cir. 1996).  Specifically, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 2007 U.S. LEXIS 5901, at *47 (May 21, 2007); see also Nat'l Emergency Servs. v. Williams, 2007 U.S. Dist. LEXIS 44136, at *6 (W.D. Va. June 19, 2007) ("Assuming the factual allegations in the complaint are true, they must be enough to raise a right to relief above the speculative level.") (internal quotations omitted).

When considering a motion to dismiss, a court may consider the documents attached to or referenced in the complaint.  Bennett v. Bank of America, N.A., 2012 WL 1354546 (E.D. Va. 2012).  Where a plaintiff refers to documents in its complaint, and the documents are central to its claims but are not attached to the complaint, the defendant may submit and the Court may

consider those documents on a Rule 12 motion without conversion of the motion to one for summary judgment.  Venture Assoc. Corp. v. Zenith Data Systems Corp., 987 F. 2d 429, 431 (7th Cir., 1993); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 593 (1969). Further, the Court may take judicial notice of proceedings in other courts without triggering a conversion to a motion for summary judgment: "the district court may also take judicial notice of matters of public record" without converting a 12(b)(6) motion into a motion for summary judgment.  United States v. Wood, 925 F. 2d 1580, 1582 (7th Cir. 1991); see also MGIC Indem. Corp. v. Weisman, 803 F. 2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.") (citations omitted); Pension Benefit Guar. Corp. v. White Consolidated Indus., 998 F. 2d 1192, 1196-1197 (3rd Cir. 1993), cert. denied, 126 L. Ed. 2d 655, 114 S. Ct. 687 (1994); Allen v. Westpoint-Pepperell, Inc., 945 F. 2d 40, 44 (2d Cir. 1991) ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to the facts stated on the face of the complaint . . . and to matters of which judicial notice may be taken.") (citation omitted); 5A Wright & Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record . . . also may be taken into account.").

Applying these well-settled standards to the factual allegations contained in Plaintiff's Complaint, as discussed below, all of Plaintiff's claims are barred as a matter of law. Accordingly, PNC is entitled to dismissal of all Plaintiff's claims with prejudice.

**B.     Plaintiff's Breach of Contract (Count One) Claim should be dismissed as a face-to-face meeting was not necessary given the extensive history between the parties.**

Plaintiff correctly asserts that FHA regulations including 24 C.F.R. §203.604 are incorporated by reference into the Deed of Trust and Note.[3]  Plaintiff further alleges that PNC failed to comply with the regulation's requirement of conducting (or attempting to conduct) a face-to-face meeting prior to the attempted foreclosure.  Complaint at ¶17.  Plaintiff then asserts, despite her long history of delinquency (yet continued cooperation from PNC), she suffered damages in the amount of $175,000 as a result of her efforts to stop the foreclosure.  Complaint at ¶84.  Plaintiff fails to state a claim for breach of contract because a face-to-face meeting at that juncture was unnecessary given the extensive history and interaction between the parties.

As Plaintiff's Complaint makes clear, PNC tried for years to accommodate Plaintiff's financial hardship, including: (i) coordinating with Plaintiff to obtain confirmation of both her 2009 and 2010 chapter 13 plans wherein Plaintiff promised to make payments to PNC (with which Plaintiff failed to comply resulting in dismissal of the first and conversion of the second bankruptcy); and (ii) even after the failure of both bankruptcies, execution of a loan modification in 2011 (with which Plaintiff also failed to comply).  This extensive history of interaction and cooperation between PNC and Plaintiff, obviates the need for a face-to-face meeting prior to the scheduled August 2012 foreclosure.  The purpose of the face-to-face meeting to allow for a discussion between the borrower and the lender regarding "the delinquency and the appropriate

---

[3]  It is noteworthy that the Mathews decision upon which Plaintiff relies was decided April 20, 2012, well after the date of PNC's first scheduled foreclosure.  Complaint at ¶42 (foreclosure scheduled for July 6, 2010 but pre-empted by Plaintiff's first chapter 13 bankruptcy petition).  PNC's second scheduled foreclosure was August 29, 2012. Complaint at ¶68.

loss mitigation options." <u>Mathews</u>, 283 Va. at 738.  Undoubtedly, numerous such discussions were had in this case where Plaintiff first went into default in 2008 (Complaint at ¶23) and PNC engaged in extensive negotiations with Plaintiff regarding loss mitigation for four years, including agreements for two chapter 13 plans.  Moreover, Plaintiff's dire financial situation (as evidenced by repeated breaches of the Note, excessive delinquency and bankruptcies) demonstrate a face-to-face meeting would not result in any positive development.   For Plaintiff to suggest she has suffered <u>any</u> damage (much less the hundreds of thousands of dollars she seeks here) as a result of a lack of face-to-face meeting is not only unwarranted by the facts of her Complaint but seriously overreaching.  This, in addition to the fact that as of the date of this pleading, Plaintiff continues to remain in the Property *six years* after her initial default.  For these reasons, Count One should be dismissed.

### C.    Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count Two) should be dismissed as a disguised HAMP claim.

Plaintiff correctly asserts that a covenant of good faith and fair dealing is implied in her Note and Deed of Trust with PNC.  The law is clear on that point.  Where Count Two fails is in the alleged breach.  Plaintiff asserts that "PNC acted arbitrarily, unreasonably, and with bad faith *during Plaintiff's three-year effort to obtain a loan modification*."  Complaint at ¶6 (emphasis added).  Plaintiff attempts, erroneously, to bring her case within this Court's rulings in <u>Acuna</u> and <u>Bourdelais</u>.[4]  In both cases, the crux of the borrowers' breach of the implied covenant claims was the lenders' inducement of the borrowers to purposely default on their loans on the

---

[4] Plaintiff also relies on <u>Gudym</u> but the Order in that case from the Alexandria Division offers no basis for its denial of the defendant bank's motion to dismiss, and thus provides no support for Plaintiff's position.  Similarly, Plaintiff's reliance on <u>Mortgages Unlimited</u> in misplaced.  That case involved a dispute between two corporations over the terms of a Mortgage Broker Agreement and the failure of one to timely notify the other of a foreclosure – facts vastly different from those in the instant case.

representation that such default would make them eligible for HAMP modifications.  No such facts exist here.

Rather, Plaintiff very clearly asserts her claim is premised upon PNC's alleged mishandling of her requests for loan modification.  Complaint at ¶6.  As noted by the Court in Bourdelais, several recent opinions in this District have held that "the duty of good faith and fair dealing does *not* extend to the *review and processing of loan modifications*, absent an express provision indicating otherwise."  2012 WL 5404084 at *5 (emphasis added).  Among those cases cited by the Court in Bourdelais are De Vera v. Bank of America, N.A., 2012 WL 2400627 (E.D. Va. 2012) (Case No. 2:12-cv-17) wherein the Court held that because the note and deed of trust did not create a duty on the part of the bank to facilitate loan modification, that plaintiff was attempting to "mask HAMP violations under the guise of an implied covenant of good faith and fair dealing."  Id. at *3.  It is well established that there is no private right of action under HAMP.  Id. at *2.

Similarly, in Chance v. Wells Fargo Bank, N.A., 2012 WL 4461495 (E.D. Va. 2012) (Case No. 3:12-cv-320), the Court noted that because plaintiff does not allege that either the promissory note or deed of trust create a contractual obligation regarding the *level of review* required in a loan modification, that plaintiff was improperly pursuing a disguised HAMP claim. Id. at *4 (emphasis added).  Additionally, in Bennett v. Bank of America, 2012 WL 135456 (E.D. Va. 2012) (Case No. 3:12-cv-34), the Court held that a lender's exercise of its contractual rights does not give rise to a claim for breach of the implied covenant (noting that the complaint was devoid of any allegations that the bank exercised its contractual *discretion* in bad faith).  Id. at *10.

The Plaintiff's claims here are similarly disguised HAMP claims.  She contends PNC breached the implied covenant in six respects:

1. Failing to abide by the terms of the Note and Deed of Trust;
2. Failing to follow HAMP guidelines;
3. Falsely representing to Plaintiff her loan modification was void;
4. Representing to the Plaintiff her loan modification was denied by an investor;
5. Falsely representing that PNC needed more documents to evaluate the loan modification; and
6. Breaching its duty of good faith "when Plaintiff breached the Note and Deed of Trust."

Complaint at ¶88.  With respect to items 1 and 6, the Note and Deed of Trust are not attached to the Complaint, (but are attached to Plaintiff's State Court Complaint and First Federal Suit).  Plaintiff fails to make any factual allegations regarding the terms of those documents, much less how PNC allegedly breached its discretion in exercising its rights under such documents.  See Bennett, supra.

Items 2 through 5 fall squarely within the Court's holdings in DeVera and Chance and can not support Plaintiff's claim because the Plaintiff has not (and can not) allege the Note and Deed of Trust require PNC to pursue a loan modification and thus the exercise of contractual rights is not implicated.  The plain terms of both documents reflect no duty on the part of PNC with respect to the level of review required in a loan modification.  PNC's efforts to assist Plaintiff (even after years of delinquency and two failed bankruptcies) were independent of that contractual relationship and do not trigger the implied covenant.  For these reasons, Count Two should be dismissed with prejudice.

### D.     Plaintiff's Complaint Fails to State a Claim for Punitive Damages.

Plaintiff has asserted two claims for breach of contract and requests the statutory maximum of $300,000 in punitive damages.  Under the law of Virginia, though a plaintiff

successfully proves a breach of a contractual obligation, he is not entitled to recover punitive damages, in addition to his compensatory damages, unless the defendant acted maliciously or so oppressively as to have committed an independent tort. Carter v. Boston Old Colony Ins. Co., 581 F.2d 1123 (4th Cir. 1978). Plaintiff's allegations fail to support the exception to the general rule that punitive damages are not permitted in contract actions.

PNC cooperated with Plaintiff for a number of years in an effort to allow her to modify her mortgage. By her own admission, Plaintiff first defaulted in 2008, yet PNC negotiated a loan modification with her as late as 2011, and she remains in the Property to date. As the servicer of the mortgage, PNC was pursuing all options available to it under state law and the applicable loan documents, including modification and foreclosure. The pursuit of such remedies can hardly be said to be malicious, wanton or oppressive.

A similar situation was recently presented in the Western District of Virginia where a defaulting homeowner complained that the lender's efforts to work out a payoff and subsequent foreclosure subjected it to liability for intentional infliction of emotional distress. In Bryant v. Washington Mut. Bank, 524 F Supp. 2d 753 (W.D. Va. 2007), the court granted the bank's motion to dismiss finding that "[d]efendants' alleged conduct is comprised of the sorts of activities typically associated with a foreclosure" and did not "rise to the requisite level of outrageousness." Id. at 761. PNC's behavior here similarly cannot be regarded as atrocious or utterly intolerable and does not support a claim for punitive damages and such claim should be dismissed.

## IV.   CONCLUSION

For all of the reasons discussed above, PNC respectfully request that this Court:  (1) grant its Motion to Dismiss the Complaint; (2) enter an Order dismissing the Plaintiff's claims with prejudice; and, (3) grant whatever additional relief the Court deems necessary and appropriate.

Dated: April 23, 2014                    Respectfully submitted,

                                          PNC BANK, NATIONAL ASSOCIATION


                                          _____/s/_____
                                          Christopher L. Perkins (VSB No. 41783)
                                          Christian Kirk Vogel (VSB No. 75537)
                                          LeClairRyan, A Professional Corporation
                                          Riverfront Plaza, East Tower
                                          951 E. Byrd Street
                                          Richmond, Virginia  23219
                                          Phone:  (804) 783-7550
                                          Fax:  (804) 783-7686
                                          cperkins@leclairryan.com

                                          *Counsel for PNC Mortgage, a division of PNC
                                          Bank, National Association*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April 2014, a true copy of the foregoing was served, via the CM/ECF system and/or regular mail, postage prepaid, upon:

Leonard A. Bennett
Robin A. Abbott
CONSUMER LITIGATION ASSOCIATIONS, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
*Counsel for Pamela A. Parris*

David N. Anthony
Troutman Sanders, LLP
1001 Haxall Point
Richmond, Virginia 23219
*Registered Agent for Experian Information Solutions, Inc.*


_____/s/_____
Christopher L. Perkins (VSB No. 41783)
Christian Kirk Vogel (VSB No. 75537)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Phone:  (804) 783-7550
Fax:  (804) 783-7686
cperkins@leclairryan.com