IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| PAMELA A. PARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:14-cv-142 |
| ) | |
| PNC MORTGAGE, a division of ) | |
| PNC BANK, N.A., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant's motion to dismiss, ECF No. 3, which was referred to the undersigned U.S. Magistrate Judge ("undersigned") pursuant to a Referral Order from the Chief U.S. District Judge. ECF No. 9; *see also* 28 U.S.C. §§ 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); E.D. Va. Local Civil Rule 72. For the following reasons, the undersigned **RECOMMENDS** that the Defendant's motion to dismiss, ECF No. 3, be **DENIED** in part and **GRANTED** in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2014, Plaintiff Pamela Parris ("Plaintiff" or "Ms. Parris") initiated this action by filing the complaint in the Circuit Court of the City of Virginia Beach, Virginia. ECF No.1, Ex. 1 ("Complaint"). Defendant PNC Mortgage ("Defendant" or "PNC") timely removed the case to this Court on April 10, 2014. ECF No. 1. Presently before the Court is PNC's motion to dismiss and brief in support, which were filed on April 23, 2014. ECF Nos. 3 and 4. Ms. Parris responded on May 21, 2014. ECF No. 7. PNC filed a notice of request for hearing on May 28, 2014. ECF No. 8. By Referral Order dated June 2, 2014, the motion to dismiss Ms. Parris's complaint was referred to the undersigned U.S. Magistrate Judge for recommended disposition.

1

ECF No. 9. Because the Defendant has not filed a reply to Ms. Parris's opposition and the time to do so expired, the matter is ripe for disposition. The undersigned finds that a hearing would not aid in the decisional process, and therefore makes the following recommendation on the briefs alone. Fed. R. Civ. P. 78(b); E.D. Va. Local Civil Rule 7(J). As such, PNC's request for a hearing, ECF No. 8, is **DENIED**.

As discussed in more detail below, the Court must accept as true all factual allegations contained in the complaint for purposes of a 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The following facts as Plaintiff alleges in the complaint are therefore accepted as true for this motion:

Ms. Parris is the owner of a home located at 401 Rennie Court in Virginia Beach, Virginia ("the property"), where she resides. Compl. at ¶6. On October 4, 2005, Ms. Parris entered into a contract with lender Virginia Home Mortgage LLC and mortgage servicer National City Mortgage Co. by executing a Note secured by a Deed of Trust on the property. ECF No. 4, Ex. 1, Ex. A and B ("Note" and "Deed of Trust"). Ms. Parris's loan is a Federal Housing Administration ("FHA") loan, which falls under the purview of the Department of Housing and Urban Development ("HUD"). *Id.* at ¶¶8-9.

In late 2008, Ms. Parris experienced financial hardship, which caused her to fall behind on her loan payments. Compl. at ¶¶22-23.[1] Ms. Parris filed for Chapter 13 bankruptcy in February of 2009. *Id.* at ¶24. In November of 2009, National City Bank merged into PNC Bank, and PNC began servicing Ms. Parris's loan.[2] Compl. at ¶26. In November of 2009, Ms. Parris

---

[1] Although not entirely clear, it appears from the complaint that Ms. Parris's financial difficulties were due to a combination of losing her job and the ill health of her son. *See* Compl. at ¶¶22, 27.
[2] PNC Financial, by way of merger in December of 2008, acquired National City Corporation, the parent company of National City Bank. ECF No. 4, n.1. In November of 2009, PNC Financial's subsidiary, PNC Bank, took over National City Bank through a successive merger, thus providing PNC with all rights and obligations under Ms. Parris's Note and Deed of Trust. *Id.*

lost her job and requested a deferment of payment on her mortgage. *Id.* at ¶27. The bankruptcy court granted Ms. Parris's request, allowing her to wait until February 2010 to resume making payments. ECF No. 4 at 3.

After becoming aware of Ms. Parris's bankruptcy proceedings and the approved deferment, PNC requested additional financial documentation from Ms. Parris, which she provided in January of 2010. Compl. at ¶¶28-31. In February of 2010, PNC informed Ms. Parris via letter that she did not qualify for additional assistance[3] because of her deficient income. *Id.* at ¶32. Despite an order from the bankruptcy court, Ms. Parris failed to resume her mortgage payments in February of 2010. ECF No. 4 at 3. On March 11, 2010, the bankruptcy court dismissed Ms. Parris's Chapter 13 Bankruptcy Petition for failure to adhere to the payment plan. *Id.* On March 17, 2010, PNC sent Ms. Parris a Pre-Acceleration Warning and Notice pursuant to Virginia Code § 55-59.1:1 (originally enacted as Act of April 23, 2008, ch. 878, S.B. No. 797, expired without re-enactment, July 1, 2010) (requiring mortgage servicers of high-risk mortgage loans to provide specific written notice of past due amount and alternatives to foreclosure at least ten days prior to notice of acceleration of balance due). Compl. at ¶33. In April of 2010, PNC requested additional financial information from Ms. Parris, and again, Ms. Parris complied with PNC's request. *Id.* at ¶35. However, on April 5, 2010, PNC sent Ms. Parris a notice of "Intent to Foreclose" on the property. Compl. at ¶36. One day later, on April 6, 2010, PNC requested that Ms. Parris call to discuss possible alternatives to foreclosure. *Id.* at ¶37. During the call, PNC advised Ms. Parris that her hardship assistance request had not been approved or finalized because Ms. Parris failed to return additional requested financial information. Compl. at ¶38. However, Ms. Parris provided all requested documentation. *Id.*

---

[3] It is not clear from the complaint whether Ms. Parris requested this initial assistance, or whether PNC unilaterally sought to provide Ms. Parris assistance after becoming aware of her bankruptcy proceeding and financial difficulties. *See* Compl. at ¶38.

3

On April 29, 2010, PNC sent another letter to Ms. Parris, informing her that it turned her loan over to an attorney for foreclosure proceedings. Compl. at ¶39. Approximately one month later, in a May 28, 2010 letter, the law firm of Shapiro & Burson, LLP advised Ms. Parris of the payoff balance amount left on her loan, but Ms. Parris believed the figures provided "were not accurate and included unlawful charges to [her] mortgage loan account." *Id.* at ¶¶40-41. The letter also informed Ms. Parris that foreclosure on the property was set for July 6, 2010. Compl. at ¶42. PNC did not attempt a face-to-face meeting before commencing foreclosure. *Id.* at ¶17. However, in early July of 2010, Ms. Parris again filed for Chapter 13 bankruptcy, which stayed any possible foreclosure on the property. Compl. at ¶43. In late July of 2010, both PNC and Shapiro & Burson, LLP separately sent additional payoff figures to Ms. Parris, but again, Ms. Parris thought those figures were also "not accurate and included unlawful charges." *Id.* at ¶¶44-47. In late August of 2010, Ms. Parris filed a Modified Chapter 13 Plan, which included arrearage payments of nearly $20,000 toward her mortgage. ECF No. 4 at 3-4 (citing *In re Parris*, No. 10-73134-SCS, Docket No. 24 (Bankr. E.D. Va. 2010)). In November of 2010, PNC informed Ms. Parris's bankruptcy attorney that Ms. Parris might be eligible for loss mitigation assistance, and that Ms. Parris should contact PNC if she was interested. Compl. at ¶48.

By February of 2011, Ms. Parris again failed to make payments in accordance with her bankruptcy plan. ECF No. 4 at 4. In March of 2011, PNC representative Lori Archer called Ms. Parris to advise her that she was approved for a loan modification. Compl. at ¶49. Later that month, the bankruptcy court again dismissed Ms. Parris's Chapter 13 petition, pending a possible conversion to Chapter 7 bankruptcy. ECF No. 4 at 4. In April of 2011, Ms. Parris signed and returned the loan modification agreement to PNC, and she converted her Chapter 13 bankruptcy

4

to Chapter 7 bankruptcy.[4] Compl. at ¶¶51-52. PNC signed the loan modification agreement on May 4, 2011, and filed it on June 27, 2011, in the land records in the Circuit Court for the City of Virginia Beach, Virginia. *Id.* at ¶¶56-57.

In July of 2011, when returning a call from PNC, Ms. Parris was advised by a different PNC representative that she failed to qualify for a loan modification because of deficient income. Compl. at ¶59. In response, Ms. Parris asked about the loan modification agreement she recently signed at the direction of Lori Archer. *Id.* PNC stated it had "pulled" the loan modification agreement because Ms. Parris failed to reaffirm debt with the bankruptcy court[5] and thus, Ms. Parris had to now reapply for a new loan modification agreement. *Id.*

On September 1, 2011, Ms. Parris sent a letter to PNC regarding reaffirmation agreements dated April 18, 2011, and August 26, 2011.[6] Compl. at ¶62. "Alex" of PNC informed Ms. Parris that the Loan Modification had been in effect the entire time, but because Ms. Parris was now again behind in payments, she would need a new repayment plan to avoid foreclosure. Compl. at ¶63. In October of 2011, PNC sent two Special Forbearance Agreements to Ms. Parris, which she refused to sign. Compl. at ¶¶65-66.

In February of 2012, PNC again commenced foreclosure proceedings on the property without a face-to-face meeting with Ms. Parris. Compl. at ¶67. After Ms. Parris received a letter with notice of the foreclosure set for August 29, 2012, she filed a lawsuit in state court and sought a temporary injunction to enjoin PNC from foreclosing on the property. Compl. at ¶¶68-69. After PNC voluntarily terminated the second foreclosure, Ms. Parris dismissed the law suit

---

[4] It is unclear from the pleadings whether Ms. Parris made a payment on June 1, 2011, as required by the loan modification agreement. *See* Compl. at ¶53; ECF. No. 7 at 14.
[5] It is also unclear from the pleadings if Ms. Parris was obligated to reaffirm her debt with the bankruptcy court or what legal repercussions would ensue from her failure to do so.
[6] Again, it was not explained what purpose reaffirmation agreements serve, or what role such agreements play in relation to the loan modification agreement and the bankruptcy process.

5

in state court. Compl. at ¶¶70-71. In March of 2014, Ms. Parris filed the present case in state court, but PNC removed the case to this Court. ECF No. 4 at 6. In April of 2014, PNC filed the motion to dismiss now before the Court. ECF No. 1.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *See Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 760 (E.D. Va. 2013). When deciding a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint alleges sufficient facts "to state a claim to relief that is plausible on its face . . . [, which requires] more than labels and conclusions – a formulaic recitation of a cause of action's elements will not do[;. . . it] must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, "[b]ecause the Plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint was dismissed." *Twombly*, 550 U.S. at 570.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Rehbein*, 937 F. Supp. 2d at 760 (quoting *Iqbal*, 556 U.S. at 679). That means "well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the Plaintiff." *Venkatraman v. REI Sys. Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *see also Conley v. Gibson*, 355 U.S. 41 (1957). "Overall, '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Rehbein*, 937 F. Supp. 2d at 760 (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

In her complaint, Plaintiff alleges claims under Virginia law. PNC removed the case to this Court, contending that this Court has subject matter jurisdiction over Plaintiff's state law claims under the diversity statute, 28 U.S.C. § 1332. ECF No. 1 at 2-3. Plaintiff does not contest removal to federal court. In federal court, except in matters governed by the federal Constitution or federal statute, the law to be applied to the substantive claims in any case is the law of the state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, the common law of Virginia applies to Plaintiff's substantive claims. *Id.* Specifically, count one alleges breach of contract, and count two alleges breach of the implied covenant of good faith and fair dealing. Plaintiff asks for an award of punitive damages for both counts. Defendant moves for dismissal of all allegations in the complaint. Defendant argues, pursuant to Federal Rule of Civil Procedure 12(b)(6), that count one fails to state a claim upon which relief can be granted, and that count two is a disguised Home Affordable Modification Program ("HAMP") claim for which there is no private right of action. Lastly, Defendant contends Plaintiff's request for punitive damages should be stricken because Plaintiff alleges insufficient facts to support a separate tort claim upon which punitive damages may be awarded.

**1. The motion to dismiss count one should be denied because Plaintiff alleges sufficient facts to support a claim for breach of contract.**

In count one, Plaintiff claims that "Defendant PNC breached the contract by failing to conduct the face-to-face meeting with Plaintiff prior to initiating foreclosure proceedings as set out in the Deed of Trust." Compl. at ¶82. Defendant argues that a face-to-face meeting "was

unnecessary given the extensive history and interaction between the parties." ECF No. 4 at 8. Defendant's argument must fail.

The elements for breach of contract under Virginia law are "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 449 (E.D. Va. 2009) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). The federal government, through the FHA as a part of HUD, insures all FHA loans made to qualifying homebuyers. Compl. at ¶9. In exchange for this benefit to lenders, HUD requires certain conditions precedent before a financial institution can commence foreclosure of any mortgage held by an FHA loan. 24 C.F.R. § 203.500. "If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced. . . ." 24 C.F.R. § 203.604. There are five exceptions to this requirement: the mortgagor does not reside at the property; the property is not within 200 miles of the mortgagee, its servicer, or a branch office of either; the mortgagor refuses to cooperate in the interview; a repayment plan consistent with the mortgagor's circumstances is entered into to bring the account current and payments thereunder are current; or reasonable efforts to arrange a meeting are unsuccessful. *Id.* A lender's rights of acceleration and foreclosure under Deed of Trust do not accrue until all conditions precedent, including the face-to-face meeting, occur. *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 202 (Va. 2012).

Here, Plaintiff alleges facts sufficient to state a claim for breach of contract. Regarding the first element, Plaintiff and Defendant entered into a contract under the Deed of Trust for an

FHA loan; thus, Defendant is bound by the foreclosure procedures discussed above pursuant to FHA regulations. Concerning the second element, neither side disputes that Plaintiff defaulted while in a repayment plan arranged other than during a personal interview, or that a face-to-face interview never occurred or was attempted. While there may have been many interactions between the parties, the specified face-to-face meeting did not take place. Of the five exceptions under HUD, having an extensive history, or multiple non-face-to-face interactions between parties, is not an exception to the required pre-foreclosure face-to-face meeting. Accordingly, although Defendant argues the extensive history between the parties is an exception, it is not. Consequently, accepting the allegations in the complaint as true as this Court is required to do at this stage of the proceedings, Defendant did not meet all required conditions precedent before commencing foreclosure and acted on rights not yet accrued. This breach of the terms of the Deed of Trust constitutes a breach of contract. Lastly, Plaintiff alleges she was injured by this breach; actual damages include costs and attorney fees to prevent improper foreclosure, default servicing fees, and foreclosure fees, as well as varied emotional distress damages. Compl. at ¶84.[7] Thus, the undersigned recommends that the Court deny the motion to dismiss as to count one because Plaintiff states sufficient facts that if true, state a claim for breach of contract.

### 2. The motion to dismiss count two should be denied because Plaintiff alleges sufficient facts to support a claim for breach of implied covenant of good faith and fair dealing.

In count two, Plaintiff claims that the Defendant breached the implied covenant of good faith and fair dealing under Virginia law. Specifically:

> PNC failed to perform its duty of good faith and fair dealing with respect to the Plaintiff by: failing to abide by the terms of the Note and Deed of Trust that govern the original loan; failing to follow HAMP guidelines; falsely representing to Plaintiff that her loan modification had been "pulled" and was null and void when in fact the loan modification agreement had been accepted and recorded

---

[7] Left for another day is the question of whether Plaintiff can recover emotional distress damages in her breach of contract action. *See Beatty v. Manor Care, Inc.*, No. 02-1720-A, 2003 WL 24902409, *5 (E.D. Va 2003).

9

among the land records in the Circuit Court for the City of Virginia Beach, Virginia; falsely representing to the Plaintiff her loan modification was denied by Plaintiff's investor in July 2011; falsely representing that PNC needed more documents in order to evaluate the Plaintiff for a modification; and by PNC's breach of its duty to act in good faith and deal fairly when Plaintiff breached the Note and Deed of Trust.

Compl. at ¶88. Defendant argues that count two is merely a disguised HAMP claim, for which there is no private right of action. ECF No. 4 at 9-10.

In February of 2009, shortly after the start of the "foreclosure crisis," the Treasury Secretary and the Director of Federal Housing Finance Agency began the Home Affordable Modification Program. Compl. at ¶72,77. This program was designed as an incentive for participating loan servicers to enter into agreements with homeowners struggling to make monthly payments. *Id.* at ¶80. There is no contractual obligation for a servicer to offer a homeowner a loan modification, however, and thus an individual cannot file suit against a lender for failure to enter into, to review, or to process a loan modification agreement – neither via breach of contract nor via breach of duty of good faith and fair dealing. ECF. 4 at 10 (citing *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10-cv-670, 2012 WL 5404084, at *2-3, 5 (E.D. Va. 2012) (citing *De Vera v. Bank of Am., N.A.*, No. 2:12-CR-17, 2012 WL 2400627 (E.D. Va. June 25, 2012))). Defendant characterizes Plaintiff's claim as being established on the "review and processing of loan modifications" in an effort to show it is a HAMP claim. *Id.* at 10. If the Court determines it is a HAMP claim, the Plaintiff has no right of action to pursue it, and the claim must automatically be dismissed.

That said, in order to state a claim for breach of the implied covenant of good faith and fair dealing under Virginia law, Plaintiff must allege facts, that if true, are sufficient to establish two elements: "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto*, 624 F. Supp. 2d at 450 (E.D. Va. 2009) (citing *Charles E. Brauer Co., Inc.*

*v. NationsBank of Va.*, 466 S.E.2d 382, 386 (Va. 1996)). A Deed of Trust is construed as a contract under Virginia law. *Virginia Hous. Dev. Auth. v. Fox Run Ltd. P'shp.*, 497 S.E.2d 747, 753 (Va. 1998). The Uniform Commercial Code defines "good faith" as "honesty in fact in the conduct or transaction concerned." Virginia Code § 8.1A-201(b)(20). The duty of good faith and fair dealing "prohibits a party from acting arbitrarily, unreasonably, and in bad faith . . . and in a manner as to prevent the other from performing its obligations under the contract." *Sun Trust Mortg., Inc. v. Mortgages Unlimited, Inc.*, No. 3:11-cv-861, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012) (citing Restatement (Second) of Contracts § 205 cmt. a (1981)).

This Court has previously held that because element one cannot be established on a HAMP claim, which has no private right of action, a claim under these circumstances will only succeed if based on another contractual relationship such as the Deed of Trust. *Bourdelais*, 2012 WL 5404084, at *10-11, 15. In *Bourdelais*, the court found it sufficient grounds to state a claim if the plaintiff alleged the defendant's employee incorrectly advised her "to skip [her] mortgage payment . . . in order to qualify" for the loan modification agreement. *Id.* at 14. In *Acuna v. Chase Home Finance, LLC*, the court denied a motion to dismiss because the plaintiff made sufficient allegations to support a claim for breach of contract by breach of implied covenant of good faith and fair dealing. *Acuna v. Chase Home Fin., LLC*, No. 3:10-CV-905, 2011 WL 1883089, at *6 (E.D. Va. May 17, 2011). There, the plaintiff alleged, among other things, the defendant breached by "(1) inducing him to default by telling him his chances of receiving a loan modification would increase if he did so; (2) falsely assuring [him] about the status of his modification; . . . and (4) failing to follow HAMP guidelines." *Id.* Thus, the court held that inducing a plaintiff to forego making payments and falsely conveying the status of a loan

modification agreement can be sufficient grounds for a claim of breach of implied good faith and fair dealing.

On the other hand, in the following cases, the defendants' motions to dismiss were granted because the claims were deemed disguised HAMP claims. In *De Vera v. Bank of Am., N.A.*, the plaintiff alleged breach of covenant of good faith and fair dealing by "(1) failing to review Plaintiff for a modification of her loan and (2) failing to properly consider the borrowers for alternative modification programs." *De Vera*, 2012 WL 2400627, at *3. In *Chance v. Wells Fargo Bank, N.A.*, the plaintiff alleged breach of covenant of good faith and fair dealing by "(i) failing to properly review Plaintiff for a loan modification (ii) foreclosing on Plaintiff's home before a proper review has been done and a denial letter has been sent to Plaintiff." *Chance v. Wells Fargo Bank, N.A.*, No. 3:12-CV-320-JRS, 2012 WL 4461495, *4 (E.D. Va. Sept. 25, 2012). In these instances, the court found that the plaintiff could not compel the defendant to perform contractual obligations not expressed in a Deed of Trust or Note. *Id.*; *De Vera*, 2012 WL 2400627, at *3. Thus, failing to review a request for a loan modification, failing to properly consider the plaintiff for an alternative loan modification, or failing to conduct a proper review of a loan modification request before commencing foreclosure, none of which are contractual obligations that would appear in a Deed of Trust or Note, do not constitute a breach of implied good faith and fair dealing. Rather, they constitute disguised HAMP claims.

Here, regarding the first element of whether there is a contractual relationship between the parties, although Defendant argues count two is actually a HAMP claim, like in *Bourdelais*, a claim for breach of the implied covenant of good faith and fair dealing can be based upon a contractual relationship formed by the Note and Deed of Trust instead of on HAMP deficiencies. Moreover, unlike in *De Vera* or *Chance*, Plaintiff has not alleged Defendant failed to properly

12

review loan modification agreements, failed to properly consider Plaintiff for any alternative modification programs, or foreclosed on the property before completing a proper review, all of which were deemed disguised HAMP claims. Instead, Plaintiff brings count two on the contractual relationship established by the Note, secured by the Deed of Trust, on the property. Regarding the second element of whether Defendant breached the implied covenant, like in *Bourdelais* and *Acuna*, where false statements were made by the defendant, Plaintiff alleges facts sufficient to show Defendant falsely assured Plaintiff about the status of her modification. When a PNC representative stated Ms. Parris's loan modification agreement had been "pulled," Compl. at ¶59, when in fact PNC had filed it with the land records department of the state court, *id.* at ¶57, Defendant was not "honest in fact," or reasonable, in making such incorrect assertions. Furthermore, Plaintiff would like for the Court to infer that Defendant's unreasonable statements induced her to stop making payments toward her mortgage. *Id.* at ¶2. The undersigned finds that by alleging PNC falsely represented that Ms. Parris's loan modification had been pulled, Ms. Parris alleges sufficient facts to constitute a breach. Thus, when viewed in a light most favorable to the Plaintiff, the complaint alleges sufficient facts to state a claim for breach of the implied covenant of good faith and fair dealing. The undersigned recommends that the Court deny the motion to dismiss as to count two as well.

### 3. The Court should strike Ms. Parris's claim for punitive damages because the complaint fails to allege in an independent tort sufficient facts to show PNC behaved maliciously.

Lastly, Plaintiff claims that the Defendant's actions, as Plaintiff alleges in both counts, were "willful and wanton," thus warranting punitive damages. Compl. at ¶¶85, 92. Defendant argues Plaintiff failed to plead sufficient facts to support a claim for punitive damages because Plaintiff failed to allege facts that would constitute an independent tort. ECF No. 4 at 1.

Punitive damages are seen as a form of punishment and are not often awarded in Virginia. *Philip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 283 (Va. 1988). The general rule in Virginia is to limit damages for breach of contract to pecuniary losses. *TIG Ins. Co., v. Alfa Laval, Inc.*, No. 3:07CV683, 2008 WL 639894, *2 (E.D. Va. Mar. 5, 2008) (citing *Kamlar Corp. v. Haley*, 299 S.E.2d. 514, 517 (Va. 1983); *A&E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 671 (4th Cir. 1986)). To overcome a motion to dismiss, a claim for punitive damages in a breach of contract case must allege sufficient facts to show "the defendant acted maliciously or so oppressively as to have committed an independent tort." *Carter v. Boston Old Colony Ins. Co.*, 581 F.2d 1123, 1124 (4th Cir. 1978); *see also Wright v. Everett*, 90 S.E.2d 855, 860 (Va. 1956), *Kamlar Corp.*, 299 S.E.2d at 518, *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 338 (E.D. Va. 2004). Moreover, in *Kamlar Corp. v. Haley*, the Virginia Supreme Court concluded that the independent tort must be alleged in a separate count from the breach of contract claim, regardless of any allegations of underlying motive. *Kamlar Corp.*, 299 S.E.2d at 518 ("a plaintiff seeking punitive damages should allege a wilful, (sic) independent tort in a count separate from that which alleges a breach of contract"); *see also TIG Ins. Co.*, 2008 WL 639894, *2 (citing *A&E Supply Co.*, 798 F.2d at 672). In Virginia, the duty to act in good faith is implied in every contract; however, "failure to act in good faith . . . does not amount to an independent tort" by itself. *Brauer Co. v. Nationsbank of Virginia, N.A.*, 466 S.E.2d 382, 385 (Va. 1996); *see also TIG Ins. Co.*, 2008 WL 639894, *3 (citing *Levine v. Selective Ins. Co. of Am.*, 462 S.E.2d 81, 84 (Va. 1995).

It is not enough to merely characterize a breach of contract as a willful, wanton, or malicious independent tort; rather, this separate count must allege breach of duty arising under common law, not contract law. *Hewlette*, 318 F. Supp. 2d at 336-37; *see also Bettius &*

*Sanderson, P.C. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, et. al.*, 839 F.2d 1009, (4th Cir. 1988) (citing *Kamlar*, 299 S.E.2d at 518). The willful or wanton behavior must be "undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Pierce v. Wells Fargo Bank*, No. CL11-1373, 85 Va. Cir. 32, *6 (Va. Cir. Ct. Jan. 6, 2012) (quoting *Green v. Ingram*, 60 S.E.2d 917, 923 (Va. 2005) (citing *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003))); *see also Wright*, 90 S.E.2d at 858. Therefore, the plaintiff must first allege a separate tort and then provide sufficient facts to support the proposition the behavior constituting the tort is willful, wanton, or malicious.

In *Tidewater Beverage Serv.'s, Inc., v. Coca Cola Co.*, the plaintiff avoided dismissal of its action because it alleged a separate, independent tort of fraud in addition to breach of contract. *Tidewater Beverage Serv.'s, Inc., v. Coca Cola Co., Inc.*, 907 F. Supp. 943 (E.D. Va. 1995). There, the plaintiff alleged the defendant made false representations to the plaintiff in order to induce the plaintiff to spend significant capital in exchange for the promise of a service contract for a term of years – terms contrary to the defendant's prior plans. *Tidewater*, 907 F. Supp. at 945 (E.D. Va. 1995). In *Turk v. Martin*, the court found sufficient evidence supporting "willful, wanton and malicious disregard of plaintiff's rights" when a landlord assaulted his tenant to "teach him a lesson." *Wright*, 90 S.E.2d at 859 (citing *Turk v. Martin*, 97 S.E. 351 (1918)). In *Anchor Co., Inc. v. Adams*, the court held the landlord's unlawful entrance and unauthorized renovations of tenant's premises, accompanied by subsequent destruction of tenant's business, constituted "willful, wanton, and unlawful disregard of rights of plaintiff." *Wright*, 90 S.E.2d at 859 (citing *Anchor Co., Inc. v. J.R. Adams, et. al.*, 124 S.E. 438 (1924)).

On the other hand, in *Hill v. Alstom Power, Inc.*, the court dismissed a claim for punitive damages because the plaintiff failed to plead fraud with specificity pursuant to Federal Rule of Civil Procedure 9(b), and no other independent tort remained to support punitive damages. *Hill v. Alstom Power, Inc.*, No. 3:13–cv–00496–JAG, 2013 WL 6408416, *3 (E.D. Va. Dec. 6, 2013). Additionally, the *Wright* court held there were not sufficient facts to support punitive damages even though the evidence proved the defendant (1) failed to properly investigate a matter, (2) failed to have utility accounts transferred as promised, and (3) failed to keep plaintiffs fully informed. *Wright*, 90 S.E.2d at 860.

Here, unlike in *Tidewater* but similar to *Hill*, there is no allegation of a separate, independent tort to which Plaintiff can bootstrap punitive damages. Additionally, distinct from *Tidewater*, *Turk*, and *Anchor*, the facts here, as Plaintiff currently alleges, are insufficient to support an independent tort such as assault, active pursuit of Plaintiff's financial destruction, or fraud. Moreover, like in *Wright*, Plaintiff merely alleges facts to support the proposition that Defendant failed to carry out his contractual duties. Plaintiff has asserted no specific tort claim, and neither count one nor count two alleges sufficient facts to permit the Court to conclude that a separate tort claim may be inferred from those facts asserted. As in *Hewlette*, merely characterizing a breach of contract as willful, wanton, or malicious, as Plaintiff has done here, is not sufficient. The facts asserted simply do not support the legal conclusion that Defendant acted so egregiously that punitive damages are warranted. Without allegations of a separate tort and sufficient facts in support thereof, punitive damages cannot be awarded. Accordingly, the undersigned recommends that the Court grant the motion to dismiss Plaintiff's claim for punitive damages.

### 4. Conclusion

Plaintiff's complaint states sufficient facts to survive the motion to dismiss on count one because Plaintiff sufficiently alleges breach of contract for failure to meet all of the required conditions precedent before instituting foreclosure proceedings, specifically, to conduct, or attempt to conduct, a face-to-face meeting. Plaintiff also overcomes the motion to dismiss on count two, breach of the implied covenant to act in good faith and fair dealing, because Plaintiff alleges that PNC falsely represented that her modification plan had been "pulled," when in fact PNC had filed it in the land records. As pled, the motion to dismiss should be granted only regarding Plaintiff's demand for punitive damages, because Plaintiff failed to allege an independent tort in a separate count, and sufficient facts in support thereof.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that the Defendant's motion to dismiss, ECF No. 3, be **DENIED** in part, and **GRANTED** in part, but only to the extent that the request for punitive damages be stricken.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this report and recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a de novo determination of those portions of this report and recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this report and recommendation to the counsel of record for the Plaintiff and Defendant.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 7, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Leonard A. Bennett
Ms. Susan Rotkis
Ms. Robin A. Abbott
Mr. Gary L. Abbott
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Counsel for Plaintiff

Mr. Christopher L. Perkins
Mr. Christian Kirk Vogel
LeClairRyan, a Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Counsel for Defendant

Fernando Galindo,
Clerk of the Court

By: _____/s/ T. Brown_____
Deputy Clerk
July __7__, 2014